[No. 8268.  In Bank. — February 19, 1886.]

JOHN GILSON, RESPONDENT, *v.* WILLIAM D. ROB-INSON ET AL. WILLIAM D. ROBINSON, APPELLANT.

STATE LAND — CONTEST AS TO RIGHT TO PURCHASE — ORDER FOR TRIAL — JURISDICTION. — The action was brought to determine a contest as to the right to purchase certain state lands. The order of the surveyor-general referring the contest for trial, after reciting what had been done by and for each of the parties to give him a right to purchase, and that the plaintiff had filed a demand that the contest be referred to the proper court, read as follows: "It is therefore ordered and directed that the said parties be and they are hereby referred to the District Court of the twentieth judicial district in and for Monterey County for a final determination of said conflicting claims." *Held*, that the order was sufficient to refer the contest, and to give the court jurisdiction of the case.

ID. — CONTEST AFTER ISSUANCE OF CERTIFICATE. — A contest as to the right to purchase state lands may be made after a certificate of purchase has been issued to one of the claimants.

ID. — TOWNSHIP NOT SUBDIVIDED — AFFIDAVIT FOR PURCHASE — REQUISITES OF. — Under section 12 of the act of March 28, 1868, as amended in 1870, an applicant for the purchase of state lands situated in a township which has not been subdivided, but the exterior lines of which have been established so as to clearly show that the land applied for is included in a thirty-sixth section, must state in his affidavit that there is no legal claim to the land other than his own, and that the land is not occupied by any *bona fide* settler.

ID. — DEFECTIVE AFFIDAVIT — CURATIVE ACTS. — Where these facts are omitted from the affidavit, the defect is not cured by the act of March 27, 1872, if the applicant did not make any payment on the land or receive his certificate of purchase until after the passage of the act, nor is it cured by the act of April 1, 1878, amendatory thereof.

APPEAL from a judgment of the Superior Court of Monterey County.

The facts are stated in the opinion.

*William H. Webb*, for Appellant.

*S. O. Houghton*, and *T. Beeman*, for Respondent.

BELCHER, C. C.— This is an action to determine a contest as to which of the parties has the better right to

purchase from the state the southeast quarter of a certain thirty-sixth section of land in Monterey County.

In the court below judgment was entered in favor of the plaintiff, and the defendant has appealed. The case comes here on the judgment roll.

The findings show the facts to be as follows: In the year 1854 the north and south exterior lines, and in 1855 the east and west exterior lines, of the township in which the land in controversy is situated, were run by the United States surveyor-general, but no other steps were taken relative to the survey of the township until the fall of 1874. In the fall of 1874 the township was surveyed and subdivided into sections and quarter-sections, as directed by section 2395 of the Revised Statutes of the United States; and on the twenty-seventh day of November of that year, the map or plat of the survey was duly approved by the surveyor-general and filed in the proper United States land-office. In 1869 one Kellogg settled upon the quarter-section in controversy, and placed thereon valuable improvements, consisting of a dwelling-house, barn, corrals, fences, etc. He inclosed and cultivated a part of the land, and resided in the dwelling-house with his family until June, 1871, when he sold and conveyed his improvements and possession to the mother of plaintiff. She at once took possession of the premises and remained in possession until March, 1873, when she died, leaving the plaintiff her sole heir. From the time of her purchase till her death, the plaintiff resided with her on the land, cultivating a part of it, and using the balance as a dairy pasture, and ever since her death he has continued in the exclusive possession and occupation of it, claiming ownership as the heir of his mother.

On the 21st of October, 1870, the defendant filed in the office of the state surveyor-general an application to purchase the quarter-section, and his application was approved on the 29th of December, 1873. On the 3d of March, 1874, he made the first payment, as required by

the statute under which the application was made, and the register of the land-office issued to him a certificate of purchase.

When he made his application, the defendant was not, nor has he ever at any time been, in the possession or occupation of any part of the land which he sought to purchase.

On the 13th of January, 1875, the plaintiff filed in the surveyor-general's office an application to purchase from the state the south half of the quarter-section upon which his buildings and improvements were located; and afterwards, on the 5th of April, 1876, before any action was taken upon his application, and before any intervening adverse rights had accrued or attached, he amended his application so as to include the entire quarter-section,.of which he was then in the actual possession.

All the land in the township was agricultural land, and fit for cultivation, and each of the applicants was qualified and competent to purchase school land from the state.

1. It is claimed for the appellant that the court below had no jurisdiction to hear and determine the case, because no proper and sufficient order was made by the surveyor-general referring the contest between the parties to the court for trial.

In the complaint it is alleged that the plaintiff demanded of the surveyor-general that the contest between the plaintiff and defendant be referred to the proper court for determination, and thereupon that officer did refer said contest to the District Court, etc., for adjudication. These averments are not denied by the answer. Attached to the complaint is a copy of the order, made by the surveyor-general, which, after reciting what had been done by and for each of the parties to give him a right to purchase the land, and that the plaintiff had filed a demand that the contest be referred to the proper court, reads as follows: "It is therefore ordered and di-

rected that the said parties be, and they are hereby, referred to the District Court of the twentieth judicial district in and for Monterey County for a final determination of said conflicting claims."

This order was sufficient, we think, to refer the *contest*, and to give the court jurisdiction of the case.

It is further claimed that there was no contest to be referred, because a certificate of purchase had been issued to appellant, and nothing was left for the surveyor-general or register to do except, when final payment should be made, to prepare and issue to him a patent. In support of this view, *Somo* v. *Oliver*, 52 Cal. 378, is cited. In that case, it was held that a contest cannot be made before the surveyor-general in respect to the right to purchase land for which a patent has been issued to one of the parties; but that is not in point here. A patent divests the state of its title, but a certificate of purchase has no such effect. It has been held in many cases in this state that a contest may be made where only a certificate of purchase has been issued. (*Woods* v. *Sawtelle*, 46 Cal. 389; *Cunningham* v. *Crowley*, 51 Cal. 128; *Christman* v. *Brainard*, 51 Cal. 534.)

2. When the defendant made his application, the land was in the occupation of Kellogg, to whose possession the plaintiff afterwards succeeded. The application was made under the act of March 28, 1868. (Stats. 1867–68, p. 507.) Section 52 of that act provides that whenever any resident of this state desires to purchase any portion, not less than the smallest legal subdivision, of a sixteenth or thirty-sixth section of any township in the state, which has been surveyed by authority of the United States, he shall make an affidavit stating, among other things, "that there is no occupation of said lands adverse to any that he or she may have; or if there shall be adverse occupation, then he or she shall state that the township has been sectionized and subject to pre-emption three months or over; and that said adverse

occupant (giving his or her name) has been in such occupation for more than sixty days."

Section 12 of the act as amended in 1870 (Stats. 1869–70, p. 875) provides: "That in cases where the townships have not been subdivided, but township and other lines have been established so as to clearly show that a tract of land is included in any thirty-sixth section, and the parties applying for the same make affidavit that there is no legal claim to the same other than his or their own, and that the same is not occupied by any *bona fide* settler, the surveyor-general may approve such locations, without the acceptance of the register of the United States land-office, and the register of the state land-office may issue certificate of purchase for the same."

As the township was not surveyed and sectionized until 1874, it is apparent that defendant's application was not, and could not have been, made under section 52. (*Medley* v. *Robertson*, 55 Cal. 396.)

Was it made under section 12? If it was, his affidavit must have stated that there was no legal claim to the premises other than his own; and that the same were not occupied by any *bona fide* settler. But there is nothing in the complaint, answer, or findings to show that the affidavit contained such statement, and no presumption can be indulged in that it did.

In cases of this kind each party is an actor, and must set forth in his pleadings and show by his proofs that he has strictly complied with the law, and by such compliance has become entitled to purchase the land. If he fails to do this, he can obtain no assistance from the courts. (*Woods* v. *Sawtelle*, 46 Cal. 392; *Cadierque* v. *Duran*, 49 Cal. 356; *Christman* v. *Brainard*, 51 Cal. 536; *Lane* v. *Pferdner*, 56 Cal. 122.)

But it is said that defendant's application, however defective it may have been, was made good by the act for the relief of purchasers of state lands, which was passed March 27, 1872. (Stats. 1871–72, p. 587.)

The first section of that act provides: "When application has been made to purchase lands from this state, and payment made to the treasurer of the proper county for the same, in whole or in part, and a certificate of purchase or patent has been issued to the applicant, the title of the state to said lands is hereby vested in said applicant, or his assigns, upon his making full payment therefor; provided no other application has been made for the purchase of the same lands prior to the issuance of said certificate of purchase."

Obviously this had reference to cases where not only the application, but part or full payment had been made, and the certificate of purchase issued prior to the time of its passage. (*Rowell* v. *Perkins*, 56 Cal. 226.)

It was a curative act, and not prospective in its operation; and as the defendant did not make any payment or receive his certificate till March, 1874, he can claim nothing under it.

Our attention is also called to the act of April 1, 1878, amending the last-named act. (Stats. 1877–78, p. 914.)

This act cannot affect the case, for the reason that it was passed after the plaintiff made his application, and after this action was commenced; and by its terms is not to be "construed to remedy any defect in any application or the issuing of any certificate other than that of payments in the wrong county."

When the plaintiff made his application to purchase the land, he was in possession and had a right to purchase it, unless the defendant had acquired a prior and better right to do so.

As no such prior and better right was shown, the court properly entered judgment in favor of the plaintiff, and that judgment should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

THE COURT.—For the reasons given in the foregoing opinion, the judgment is affirmed.